STATE OF NORTH CAROLINA v. LUCIAN JEFFERSON PEELE, JR., Defendant

No. COA08-713

(Filed 5 May 2009)

**Search and Seizure— driving while impaired—grounds for stop not reasonable—tip from dispatcher—weaving within lane**

The trial court erred by denying defendant's motion to suppress evidence of impaired driving obtained as a result of an anonymous tip to the dispatcher and the officer's observation of one instance of weaving within the lane. The tip had no indicia of reliability, and no corroboration, and defendant's conduct fell within the broad range of normal driving behavior.

Appeal by defendant from judgment entered 6 February 2008 by Judge Thomas D. Haigwood in Martin County Superior Court. Heard in the Court of Appeals 3 December 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Kathryne E. Hathcock, for the State.*

*The Robinson Law Firm, P.A., by Leslie S. Robinson, for defendant-appellant.*

STATE v. PEELE

[196 N.C. App. 668 2009)]

GEER, Judge.

Defendant Lucian Jefferson Peele, Jr. appeals from his conviction for driving while impaired ("DWI"). Defendant contends primarily that the trial court erred in denying his motion to suppress on the grounds that the police officer who stopped him lacked the necessary reasonable articulable suspicion. The State responds that an anonymous tip combined with the officer's own observations were sufficient to supply reasonable suspicion. We have concluded, however, that the State failed to demonstrate either that the tip was reliable or that it was corroborated by the police officer. In addition, the police officer's own observations of defendant—involving a single instance of weaving within his lane of travel over a tenth of a mile—were insufficient to provide reasonable suspicion. Finally, given the totality of the circumstances, we cannot conclude that the uncorroborated anonymous tip combined with the officer's observation of a single instance of weaving was sufficient to give rise to reasonable suspicion. Consequently, we hold that the trial court erred in denying defendant's motion to suppress. We, therefore, reverse and remand for a new trial.

## Facts

At approximately 7:50 p.m. on 7 April 2007, Sergeant James Sullivan of the Williamston Police Department responded to a dispatch regarding "a possible careless and reckless, D.W.I., headed towards the Holiday Inn intersection." The vehicle was described as a burgundy Chevrolet pickup truck. Sergeant Sullivan arrived at the intersection "within a second" and observed a burgundy Chevrolet pickup truck. After following the truck for about a tenth of a mile and seeing the truck weave within his lane once, Sergeant Sullivan pulled defendant over for questioning. Defendant was subsequently transported to the Martin County Courthouse and administered an Intoxilyzer test. The test recorded an alcohol concentration of .08, and defendant was issued a DWI citation.

Defendant was found guilty of DWI in Martin County district court on 2 July 2007. He appealed to superior court for a trial by jury. On 2 November 2007, defendant filed a pretrial motion to suppress evidence obtained as a result of Sergeant Sullivan's stop and defendant's subsequent arrest. At trial, following voir dire of Sergeant Sullivan, the trial court denied defendant's motion to suppress, ruling:

[T]he standard here is a reasonable grounds of suspicion based on the totality of the circumstances, and, based upon the testi-

mony that I've heard, I'm satisfied that the State has produced sufficient evidence that there was a reasonable ground of suspicion based on the information communicated to the officer by radio, which was immediately corroborated by him as far as the location and description of the vehicle, and the subsequent operation of the vehicle and the weaving in its lane of travel; that that generated a reasonable ground of suspicion to stop the motor vehicle in question, and so I'm going to respectfully overrule and deny your motion.

After the jury found defendant guilty of DWI, the trial court sentenced defendant to 60 days imprisonment, suspended that sentence, and placed defendant on 12 months of supervised probation. Defendant timely appealed to this Court.

## Discussion

Defendant contends that Sergeant Sullivan lacked reasonable suspicion to stop him and, therefore, the trial court erred in denying his motion to suppress. "The scope of review of the denial of a motion to suppress is 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.' " *State v. Bone*, 354 N.C. 1, 7, 550 S.E.2d 482, 486 (2001) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)), *cert. denied*, 535 U.S. 940, 152 L. Ed. 2d 231, 122 S. Ct. 1323 (2002). "The trial court's conclusions of law, however, are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

Under the Fourth Amendment, which prohibits unreasonable searches and seizures, a police officer is permitted to "conduct a brief investigatory stop of a vehicle and detain its occupants without a warrant." *State v. McArn*, 159 N.C. App. 209, 212, 582 S.E.2d 371, 374 (2003). "[I]n order to conduct a warrantless, investigatory stop, an officer must have reasonable and articulable suspicion of criminal activity." *Hughes*, 353 N.C. at 206-07, 539 S.E.2d at 630. "The reasonable suspicion must arise from the officer's knowledge prior to the time of the stop." *Id.* at 208, 539 S.E.2d at 631.

"Reasonable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d

438, 439 (2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576, 120 S. Ct. 673, 675-76 (2000)). "The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' " *State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989)). "[T]he overarching inquiry when assessing reasonable suspicion is always based on the *totality* of the circumstances." *State v. Maready*, 362 N.C. 614, 619, 669 S.E.2d 564, 567 (2008).

In this case, the trial court based its denial of the motion to dismiss on the dispatch and the court's finding that defendant had been "weaving in [his] lane of travel." Defendant, however, argues that this latter finding is not supported by competent evidence. To the extent that the trial court's finding can be read to indicate that defendant was continuously weaving in the lane, we agree with defendant that such a finding is not supported by the State's evidence.

Sergeant Sullivan testified that he "followed [defendant] a short distance and observed [him] weave into the center, bump the dotted line, and then fade to the other side and bump the fog line, and then pretty much go back into the middle of the lane." He did not testify to any other instance of weaving. This evidence only supports a finding that Sergeant Sullivan observed defendant weave once within his lane of travel. Accordingly, we must determine whether the dispatch when combined with the single instance of weaving is sufficient to warrant a determination that Sergeant Sullivan had reasonable suspicion to stop defendant.

We first note that Sergeant Sullivan's observation of a single instance of weaving within his lane was not sufficient to establish reasonable suspicion to stop defendant. In *State v. Fields*, 195 N.C. App. ——, ——, 673 S.E.2d 765, 769 (2009), this Court held "that defendant's weaving within his lane, standing alone, is insufficient to support a reasonable suspicion that defendant was driving under the influence of alcohol."

Sergeant Sullivan, however, also testified—and the trial court found—that he received a radio communication from dispatch. That communication stated: "Williamston cars be advised, report of a possible careless and reckless, D.W.I., headed towards the Holiday Inn intersection." The dispatch then described the vehicle as a burgundy Chevrolet pickup truck. Defendant contends that this dispatch reflected an anonymous tip. The State argues that the tip was not nec-

essarily anonymous, but can point to no evidence that indicates that the report to the police came from an identified caller. Indeed, at trial, defense counsel specifically argued, without objection, that the caller was anonymous. On this record, therefore, the tip regarding a careless and reckless driver must be considered anonymous.

"An anonymous tip can provide reasonable suspicion as long as it exhibits sufficient indicia of reliability." *Hughes*, 353 N.C. at 207, 539 S.E.2d at 630. On the other hand, "a tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration." *Id.* In sum, to provide the justification for a warrantless stop, an anonymous tip "must have sufficient indicia of reliability, and if it does not, then there must be sufficient police corroboration of the tip before the stop may be made." *Id.*

Here, the State contends that the tip was sufficiently reliable either standing alone or based on police corroboration "[b]ecause all information provided by the caller was correct in every detail" and "Sergeant Sullivan verified details provided by the informant through his independent observations." As our Supreme Court explained in *Hughes*, however, "reasonable suspicion does not arise merely from the fact that the individual met the description given to the officers." *Id.* at 209, 539 S.E.2d at 632. The Court explained:

> "An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."

*Id.* (quoting *Florida v. J.L.*, 529 U.S. 266, 272, 146 L. Ed. 2d 254, 261, 120 S. Ct. 1375, 1379 (2000)).

This Court applied this principle in *McArn*, in which an anonymous tip reported, without more, that a white Nissan on Franklin and Sessoms Street in Lumberton, North Carolina was involved in a drug deal:

> Here, the fact that the anonymous tipster provided the location and description of the vehicle may have offered some limited indicia of reliability in that it assisted the police in identifying the

vehicle the tipster referenced. It has not gone unnoticed by this Court, however, that the tipster never identified or in any way described an individual. Therefore, the tip upon which Officer Hall relied did not possess the indicia of reliability necessary to provide reasonable suspicion to make an investigatory stop. The anonymous tipster in no way predicted defendant's actions. The police were thus unable to test the tipster's knowledge or credibility. Moreover, the tipster failed to explain on what basis he knew about the white Nissan vehicle and related drug activity.

159 N.C. App. at 214, 582 S.E.2d at 375. Because the sole basis for the officer's stop was the anonymous tip, this Court reversed the denial of the motion to suppress and remanded for a new trial. *Id.*

Similarly, in this case, the anonymous caller accurately described the car's physical characteristics and location, but did not give the police any way to test the caller's credibility. The record contains no information about who the caller was, no details about what the caller had seen, and no information even as to where the caller was located. The caller did not "predict defendant's specific future action," *Hughes*, 353 N.C. at 208, 539 S.E.2d at 631, other than that he was driving from one stoplight to the next. *Id.* at 210, 539 S.E.2d at 632 (holding that confirmation that defendant was heading in general direction indicated by tipster "is simply not enough detail in an anonymous tip situation").

Moreover, Sergeant Sullivan "did not seek to establish the reliability of the assertion of illegality." *Id.* at 209, 539 S.E.2d at 632. He observed defendant at the stoplight and making the turn. He then followed him for no more than a tenth of a mile. During that time, he saw defendant one time "float[]" over to touch the dotted line and then move over to touch the fog line. The officer agreed that he "never saw any operation at all [of defendant's vehicle] that was consistent with careless or reckless operation of the vehicle[.]" The officer thus did not corroborate the caller's assertion of careless and reckless driving. We, therefore, do not believe that this case can be meaningfully distinguished from *McArn* and, consequently, the anonymous tip lacked sufficient reliability standing alone to provide reasonable suspicion for the stop.

The question remains whether the single instance of weaving combined with the uncorroborated anonymous tip is enough to give rise to reasonable suspicion. This Court noted in *Fields* that "weaving can contribute to a reasonable suspicion of driving while impaired" if

"coupled with additional specific articulable facts" that also indicate that the defendant was driving while impaired. 195 N.C. App. at ——, 673 S.E.2d at 768. Here, however, the trial court found none of the factors that have, in prior cases, led to a determination that reasonable suspicion existed. *See, e.g., State v. Thompson,* 154 N.C. App. 194, 197, 571 S.E.2d 673, 675-76 (2002) (weaving within lane plus exceeding speed limit); *State v. Aubin,* 100 N.C. App. 628, 632, 397 S.E.2d 653, 655 (1990) (weaving within lane plus driving only 45 miles per hour on interstate), *appeal dismissed and disc. review denied,* 328 N.C. 334, 402 S.E.2d 433, *cert. denied,* 502 U.S. 842, 116 L. Ed. 2d 101, 112 S. Ct. 134 (1991); *State v. Jones,* 96 N.C. App. 389, 395, 386 S.E.2d 217, 221 (1989) (weaving towards both sides of lane plus driving 20 miles per hour below speed limit), *appeal dismissed and disc. review denied,* 326 N.C. 366, 389 S.E.2d 809 (1990); *State v. Adkerson,* 90 N.C. App. 333, 336, 368 S.E.2d 434, 436 (1988) (weaving within lane five to six times plus driving off road).

In addition, defendant was not driving late at night, and the record contains no evidence, and the trial court did not find, that he was in proximity to any bars—which are other factors that have been considered. *See Fields,* 195 N.C. App. at ——, 673 S.E.2d at 768 ("When determining if reasonable suspicion exists under the totality of circumstances, a police officer may also evaluate factors such as traveling at an unusual hour or driving in an area with drinking establishments.").

The totality of the circumstances in this case are simply that the police received an anonymous call at 7:50 p.m. reporting that the driver of a burgundy Chevrolet pickup truck was driving carelessly and recklessly with no further details. The police officer, who responded to the dispatch, found a burgundy Chevrolet pickup truck at a stoplight, but did not observe any careless or reckless driving as defendant negotiated the intersection, turned, and drove down the road. At most, the officer saw defendant on a single occasion float to the dotted line and then float back to the fog line. The trial court did not identify and the State does not argue any other suspicious circumstances.

In short, all we have is a tip with no indicia of reliability, no corroboration, and " 'conduct falling within the broad range of what can be described as normal driving behavior.' " *State v. Roberson,* 163 N.C. App. 129, 133-34, 592 S.E.2d 733, 736 (quoting *State v. Emory,* 119 Idaho 661, 664, 809 P.2d 522, 525 (Ct. App. 1991)), *disc. review denied,* 358 N.C. 240, 594 S.E.2d 199 (2004). *Compare Maready,* 362 N.C. at 619-20, 669 S.E.2d at 567-68 (holding that reasonable suspicion

existed based on (1) reliable tip by obviously distressed driver of minivan, who was traveling immediately in front of defendant's car, flagged down officers, and told them face-to-face that car behind her had been running stop signs and stop lights; and (2) officers had observed intoxicated man stumbling across road to enter defendant's car), *with Roberson*, 163 N.C. App. at 134, 592 S.E.2d at 737 (holding officer lacked reasonable suspicion that defendant was driving under the influence when officer observed defendant, at 4:30 a.m. in area with bars, waiting at green traffic light for eight to ten seconds because "[a] motorist waiting at a traffic light can have her attention diverted for any number of reasons"). If we were to uphold the trial court's decision, we would be, as the Court in *Fields* cautioned against, "extend[ing] the grounds for reasonable suspicion farther than our Courts ever have." *Fields*, 195 N.C. App. at ——, 673 S.E.2d at 769. We decline to do so and, therefore, reverse the trial court's order denying defendant's motion to suppress and remand for a new trial. Because of our disposition of this issue, we need not address defendant's remaining assignments of error.

Reversed and remanded.

Judges McGEE and BRYANT concur.