STATE OF NORTH CAROLINA
v.
JHONSON LOUIS
No. COA08-1502
Court of Appeals of North Carolina
Filed August 18, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General John F. Oates, Jr., for the State.
Linda B. Weisel for defendant appellant.
ROBERT N. HUNTER, Jr., Judge.
Jhonson Louis ("defendant") entered a guilty plea to trafficking in cocaine while preserving his right to appeal the ruling denying his motion to suppress. Defendant appeals on the grounds that the court below erred when it denied his motion to suppress evidence. We find no error.

I. BACKGROUND
In the afternoon of 15 February 2007, Raleigh Police Department ("RPD") Officers Caruana and Howard were driving to work. As they approached the heavily congested intersection of Atlantic Avenue with New Hope Church Road in Raleigh, North Carolina, Caruana saw defendant, who was a passenger in a vehicle with Florida plates. Defendant was not wearing a seat belt. Defendant and Caruana looked at each other, then the driver of the vehicle made a sudden left turn across the northbound lanes of Atlantic Avenue into a service station.
Based upon the perceived seat belt violation, Caruana activated his blue lights and followed the vehicle into the service station. Defendant immediately jumped out of the vehicle and yelled that he was "a track star" at St. Augustine's College. When Caruana approached the driver's side of the vehicle, he noticed a strong odor of marijuana. Caruana, who had been employed with the RPD for almost seven years, had worked on the RPD drug enforcement unit for more than two years, and had participated in "several hundred" marijuana arrests. He observed drug paraphernalia and marijuana blunts in the vehicle's center console and ashtray. Caruana secured the driver by handcuffing him, but did not place him under arrest, and placed him in the rear of his patrol vehicle. While Caruana was dealing with the driver, Howard was detaining defendant by having him sit down at the car. Caruana then returned to assist Howard in conducting a pat-down of defendant, wherein Caruana and Howard employed the technique of "contacts and cover" when one officer, Howard, will do the hands-on and the other officer, Caruana, will "cover down" on defendant for security purposes.
While Howard was performing the pat-down frisk of defendant, Caruana observed a small baggie of marijuana fall from defendant's pants to the ground. At that time, Officers Caruana and Howard placed defendant under arrest for possession of marijuana.
A cursory look into the vehicle revealed the presence of several small baggies, as well as a large amount of luggage and loose clothing. Caruana saw a partially open safe behind the front passenger seat. He looked in the safe and discovered a bag containing a large amount of white powder he believed to be cocaine. Later tests determined that the substance contained 606 grams of cocaine.
During the traffic stop and searches incident to the stop and arrest, neither arresting officer turned on the in-vehicle video recording equipment as required by the RPD written directive 11091-8 "Mobile Video Recording." The directive states in part that "[o]fficers will record all traffic stops[.]"
Defendant made a statement, after waiving his Miranda rights, in which he admitted that the cocaine belonged to him, and that he had stolen the cocaine earlier that day from someone he believed had stolen the cocaine from defendant's brother.

II. ISSUES
On appeal, defendant argues that the trial court erred by denying his motion to suppress evidence on the grounds that the police officers failed to videotape the stop and search of defendant and the vehicle, as required by the RPD Mobile Video Recording written directive 1109-18, and thereby denying defendant due process of the law.

III. STANDARD OF REVIEW
"When reviewing a motion to suppress, the trial court's findings of fact are conclusive and binding on appeal if supported by competent evidence. We review the trial court's conclusions of law de novo." State v. Fields, ___ N.C. App. ___, ___, 673 S.E.2d 765, 767 (2009).

III. ANALYSIS

A. Motion to Suppress Evidence
On appeal, defendant argues that the trial court erred by denying his motion to suppress evidence because the police officers failed to follow the RPD guidelines when they did not record the stop and search of defendant and the vehicle. We disagree.
We first find that defendant has abandoned his assignments of error with respect to findings of fact and conclusions of law made by the court below, in that he did not argue them in his brief. N.C. R. App. P. 28(b)(6) (2009) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."); State v. Williams, 350 N.C. 1, 10, 510 S.E.2d 626, 633, cert. denied, 528 U.S. 880, 145 L. Ed. 2d 162 (1999). Therefore, these findings of fact are binding on this Court. State v. Roberson, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36, disc. review denied, 358 N.C. 240, 594 S.E.2d 199 (2004) ("Where [] the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal.").
Defendant asserted eleven assignments of error but argued only assignments nine and ten, the subject of the issues in this case. The abandoned assignments of error dealt with the lower court's findings of fact, conclusions of law, and rulings. The findings of fact concerned the vehicle making an abrupt left turn into a gas station, the officers initiating a traffic stop on the basis of a perceived seat belt violation, and the officers being concerned about safety issues due to defendant having quickly exited the vehicle. The conclusions of law concerned the existence of probable cause to arrest defendant for a violation of the law; the officers' ability to conduct a warrantless search incident to arrest of that vehicle and its contents; the officers' possessing reasonable suspicion to conduct a traffic stop of the vehicle on the basis of a perceived seat belt violation; the existence of authority to briefly detain defendant upon noticing evidence of marijuana use in the vehicle; the existence of probable cause to arrest defendant due to discovery of perceived marijuana on defendant during a pat-down; and the motion to suppress statements being denied. The rulings concerned the lower court's denial of defendant's motion for continuance and its failure to resolve the alleged material factual dispute about whether police approached the car with guns drawn.
Our federal and state constitutions protect individuals against unreasonable searches and seizures. U.S. Const. amend. IV; N.C. Const. art. I, § 20. "Seizures include brief investigatory detentions, such as those involved in the stopping of a vehicle." Fields, ___ N.C. App. at ___, 673 S.E.2d at 767. "If the investigatory seizure is invalid, evidence resulting from the warrantless stop is inadmissible under the exclusionary rule in both our federal and state constitutions." Id.
"Our Supreme Court has held that an investigatory stop must be justified by a '"reasonable, articulable suspicion that criminal activity is afoot."'" Id. (citations omitted). "Reasonable suspicion is a `less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence[.]'" Id. (citations omitted). "A court must consider the totality of the circumstances in determining whether a reasonable suspicion existed". Id. (citation omitted).
"A law enforcement officer who observes a traffic law violation has probable cause to detain the motorist, and the scope of that detention may be expanded where the officer has a reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." State v. Hernandez, 170 N.C. App. 299, 301, 612 S.E.2d 420, 422 (2005).
In the instant case, the lower court found that Officer Caruana saw defendant not wearing a seat belt, which is a traffic law violation. See N.C. Gen. Stat. § 20-135.2A (2007). This violation, coupled with the vehicle's driver's sudden turn into the service station, gave the officers probable cause to stop the car. See State v. Hamilton, 125 N.C. App. 396, 399, 481 S.E.2d 98, 100 (officer had probable cause to stop the vehicle for the purpose of issuing seat belt citations because he had observed that both the driver and the defendant were not wearing seat belts), disc. review denied, 345 N.C. 757, 485 S.E.2d 302 (1997). Under the totality of the circumstances, including defendant jumping out of the car, marijuana falling out of his pants during a pat-down frisk, the strong marijuana smell emanating from the vehicle, the drug paraphernalia, and residue of marijuana blunts in the ashtray, the police officers reasonably could expand the scope of the detention and search. Hernandez, 170 N.C. App. at 301, 612 S.E.2d at 422.
Defendant argues that the RPD officers' failure to follow the RPD Mobile Video Recording written directive 1109-18 requiring them to videotape the stop and search denied defendant's constitutional rights. We disagree.
In Cooper v. California, the U.S. Supreme Court "reversed a state court that had held the search of a seized vehicle to be in violation of the Fourth Amendment because state law did not explicitly authorize the search." Virginia v. Moore, ___ U.S. ___, ___, 170 L. Ed. 2d 559, 568 (2008) (citing Cooper v. California, 386 U.S. 58, 170 L. Ed. 2d 730 (1967)). "We concluded that whether state law authorized the search was irrelevant." Id. "[R]egardless of state rules, police could search a lawfully seized vehicle as a matter of federal constitutional law." Id. "[T]he Fourth Amendment's meaning did not change with local law enforcement practiceseven practices set by rule. While those practices `vary from place to place and from time to time,' Fourth Amendment protections are not `so variable' and cannot 'be made to turn upon such trivialities.'" Id. (citation omitted). "[I]t is not the province of the Fourth Amendment to enforce state law. That Amendment does not require the exclusion of evidence obtained from a constitutionally permissible arrest." Id. at ___, 170 L. Ed. 2d at 571.
In the instant case, the RPD officers' arrest and subsequent search of the vehicle did not violate defendant's Fourth Amendment rights despite the officers' failure to follow an RPD guideline requiring them to videotape a stop and search. The officers had probable cause to initiate the traffic stop based on the perceived seat belt violation. Later, the officers had probable cause to conduct a search of the vehicle incident to arresting defendant on a marijuana possession charge. While the officers' failure to comply with department policies requiring videotaping of all traffic stops may give rise to internal personnel matters, it is irrelevant to the determination of whether defendant's Fourth Amendment rights were violated during the stop. Therefore, we hold the trial court properly denied defendant's motion to suppress evidence.

B. Motion for Appropriate Relief
On 26 May 2009, defendant filed a motion for appropriate relief on grounds that there has been significant change in Fourth Amendment law, namely Arizona v. Gant, ___ U.S. ___, 173 L. Ed. 2d 485 (2009). We deny defendant's motion for appropriate relief.
In considering the motion for appropriate relief in light of changes to Fourth Amendment law, we are considering issues of law. We review issues of law de novo. Brunson v. Tatum, ___ N.C. App. ___, ___, 675 S.E.2d 97, 100 (2009).
In Gant, Gant was arrested for driving on a suspended license, handcuffed, and locked in the back of a patrol car. Police officers then proceeded to search his car and discovered cocaine. The Arizona Supreme Court held that the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement did not justify the search in this case because Gant could not have accessed his car to retrieve weapons or evidence at the time of the search. The U.S. Supreme Court agreed with that conclusion. It also concluded that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, ___ U.S. ___, ___, 173 L. Ed. 2d 485, 501 (2009) (emphasis added). The U.S. Supreme Court held that "Gant was arrested for driving with a suspended licensean offense for which police could not expect to find evidence in the passenger compartment of Gant's car." Id. at ___, 173 L. Ed. 2d at 497 (emphasis added).
The facts of the instant case are distinguishable from Gant. In the instant case, defendant was initially stopped for a traffic violation; however, defendant was arrested for possession of marijuanaa drug-related offense. The RPD officers conducted a search-incident-to-arrest. The officers had smelled a strong odor of marijuana emanating from the car, observed marijuana residue in the ashtray in the center console, and observed drug paraphernalia in the vehicle. It was reasonable, therefore, for the officers to "believe the vehicle contain[ed] evidence of the offense of arrest." See id. at ___, 173 L. Ed. 2d at 498.
We find the rule in Gant was not violated, and the search and seizure were proper under the holding in Gant. Therefore, we deny defendant's motion for appropriate relief.

IV. CONCLUSION
We hold the trial court did not err in denying defendant's motion to suppress evidence where the officers had reasonable suspicion to initiate the traffic stop and had probable cause to search the vehicle incident to arresting defendant on a marijuana possession charge. We also deny defendant's motion for appropriate relief and hold that it was reasonable for the officers to believe the vehicle contained evidence of the offense of arrest. Thus, the arrest did not violate the rule announced in Gant, ___ U.S. ___, 173 L. Ed. 2d 485.
Affirmed.
Chief Judge MARTIN and Judge STEPHENS concur.
Report per Rule 30(e).